GRAVES, Administrator, Respondent, vs. RIB LAKE LUMBER
COMPANY, Appellant.

*October 10—October 29, 1912.*

*Master and servant: Death caused by unguarded belt and pulley:*
*Duty to guard: Practicability: Evidence: Competency: Cross-*
*examination.*

1. In an action to recover for the death of an employee in defend-
ant's sawmill, the evidence is *held* to sustain findings by the
jury that the deceased was injured by coming in contact with
a pulley and belt which he was engaged in shifting, and that it
was practical to securely guard said belt and pulley.
2. A question asked of a witness for defendant as to what the prac-
tice was among "reasonably careful" millmen as to guarding of
such a shaft and pulley, was incompetent, because it left the
witness to decide what millmen were "reasonably careful."
If proper at all, the question should have been as to the prac-
tice among sawmill men generally, or the great mass of saw-
mill men.
3. Where on his direct examination a witness was asked only
whether it was practical to guard such a shaft and belt without
impairing its efficiency, a ruling excluding on his cross-exami-
nation the question whether he knew of any mill in Wisconsin
where a similar shaft and pulley was guarded was, though some-
what technical, strictly correct.

APPEAL from a judgment of the circuit court for Eau
Claire county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

This is an action to recover for the death of one Farring-
ton, an employee of the defendant in its sawmill, who was
killed while at work in the mill. The negligence claimed was
failure to comply with the statute requiring the guarding or
fencing of a certain large belt and pulley, alleged to be dan-
gerous to employees in the performance of their duties. The
deceased was a millwright, and at the time of his death he,
with two associates, was attempting to shift a large and heavy
power belt from a live pulley to a dead pulley. The belt fur-
nished the power to run a slab machine, called the "hog," and

it was necessary to throw off this belt while in motion. The pulley and shaft on which it ran were elevated from the floor and were near the ceiling of the room, the pulley was twenty-five inches in diameter, and the belt eighteen inches wide. In order to shift the pulley an employee was obliged to go up a short ladder to a platform running parallel with and near the shaft, take a long stick and reach over·the top of the belt near the pulley, insert the lower end of the stick behind a cleat and pull the stick towards himself, thus pulling the belt also towards himself and onto the dead pulley. At the time of the accident Farrington took the stick (which was kept on the floor of the mill) and went up the ladder, while his two associates in the operation, Mock and Bangle, stayed on the floor of the mill to release a heavy tightener for the purpose of loosening the belt. While the two last named were lifting the tightener they heard a noise and turned around. They found deceased upon the floor with a large gash in his right temple. He lived about half an hour, but never spoke. The stick was afterwards found in its place behind the cleat ready to pull the belt off. The jury returned the following special verdict:

"(1) Was John Farrington injured by coming in contact with the belt, pulley and shaft, or with any of said appliances? A. Yes.

"(2) If you answer question No. 1 'Yes,' then with which of said appliances did he so come in contact? A. Belt and pulley.

"(3) If you answer question No. 1 'Yes,' then was the said machinery with which the said John Farrington came in contact at the time of his injury so located as to be dangerous to employees of the defendant when in the discharge of their duty while using ordinary care? A. Yes.

"(4) If you answer question No. 3 'Yes,' then was the failure of the defendant to securely guard or fence said machinery the proximate cause of the injury to said Farrington? A. Yes.

"(5) If you answer question No. 1 'Yes,' then did the defendant fail to exercise ordinary care in failing to securely guard or fence said machinery? *A.* Yes.

"(6) If you answer question No. 5 'Yes,' then was the failure of the defendant to exercise ordinary care the proximate cause of the injury to said Farrington? *A.* Yes.

"(7) Was it practical in the efficient operation of said mill to securely guard or fence said belt and pulley? *A.* Yes.

"(8) If you answer question No. 7 'Yes,' then would such guard or fence have lessened the danger, if any, to the said Farrington in the performance of his duties? *A.* Yes.

"(9) Did any want of ordinary care on the part of said Farrington proximately contribute to his injury? *A.* No.

"(10) If the court should determine that the plaintiff is entitled to judgment on this verdict, at what sum do you assess plaintiff's damages? *A.* $5,000."

From judgment in accordance with the verdict defendant appeals.

For the appellant there was a brief by *McFarland & Murat,* and oral argument by *C. D. McFarland.*

*D. D. Conway,* attorney, and *P. H. Martin,* of counsel, for the respondent.

WINSLOW, C. J.　The contention that the manner of Farrington's death rests purely in conjecture cannot be sustained; in fact, it seems that it would be impossible to arrive at any conclusion except that he came in contact with the belt and pulley, as found by the jury. The contention that it is demonstrated by the evidence that it was not feasible or practically possible to fence or guard the belt and pulley is equally untenable. The device for shifting the belt was certainly crude and would necessitate a somewhat cumbrous fence, but the testimony was ample that a fence with an opening through which the arm could be put was entirely practicable and would have obviated the danger of any such accident.

Two rulings on testimony are complained of and will be

noticed.    One Ehrman, a witness for defendant, was asked what the practice was among "reasonably careful" millmen as to the guarding of such a shaft and pulley, and objection to the question was sustained.    The ruling was right.    Conceding, but not deciding, that the question was otherwise un-objectionable, it was clearly incompetent, because it left the witness to decide what millmen were "reasonably careful" millmen, and this was not the proper province of the witness. The question (if proper at all) was, what the practice was among sawmill men generally, or the great mass of sawmill men, with regard to the fencing of such belts and pulleys, and this question was allowed to be asked and answered by the witness at a later period in his examination.

A witness for the plaintiff was asked on direct examination whether it was practical to guard such a shaft and belt without impairing its efficiency, and was not examined on any other subject.    Upon cross-examination he was asked whether he knew of any mill in Wisconsin where a similar shaft and pulley was guarded, and an objection to the question as not proper cross-examination was sustained.    This ruling is assigned as error, but, though somewhat technical in its enforcement of the general rule which limits cross-examination to matters gone into on the direct examination, it seems to be strictly correct.    No other contentions require treatment.

*By the Court.*—Judgment affirmed.